**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| JUANA M. NAVARRO, | ) | No. CV 10-217-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 14, 2010, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 1, 2010, and February 19, 2010. The parties filed a Joint Stipulation on September 17, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 4, 1960.  [Administrative Record ("AR") at 95, 103.]  She has a high school diploma, has received computer training, and has past relevant work experience as a customer service representative, secretary, and store manager.  [AR at 34-36, 108-12, 119-21, 127.]

Plaintiff protectively filed her application for Supplemental Security Income payments on June 8, 2007, alleging that she has been unable to work since December 2, 1999, due to, among other things, depression, anxiety, and back problems.  [AR at 7, 63, 95-98, 103-07, 118-28.]  After plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 65-69, 71-76, 80.]  A hearing was held on May 7, 2009, at which plaintiff appeared with counsel and testified on her own behalf.  A vocational expert also testified.  [AR at 31-60.]  On June 2, 2009, the ALJ found plaintiff not disabled.  [AR at 4-19.] When the Appeals Council denied plaintiff's request for review of the hearing decision on November 19, 2009, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-3.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

1  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

2  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

3  prima facie case of disability is established.  The Commissioner then bears the burden of

4  establishing that the claimant is not disabled, because she can perform other substantial gainful

5  work available in the national economy.  The determination of this issue comprises the fifth and

6  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

7  n.5; Drouin, 966 F.2d at 1257.

8

9  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

10         In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial

11  gainful activity since the date plaintiff filed her application for Supplemental Security Income

12  payments.  [AR at 9.]  At step two, the ALJ concluded that plaintiff has the "severe" impairments

13  of degenerative changes of the lumbosacral spine, anemia, obesity, and dysthymia.  [Id.]  At step

14  three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments

15  in the Listing.  [AR at 11.]  The ALJ further found that plaintiff retained the residual functional

16  capacity[1] "to perform a range of medium work."[2]  [AR at 12.]  Specifically, the ALJ stated that

17  plaintiff "can lift fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk six

18  hours and sit six hours in an eight-hour workday.  [Plaintiff] can occasionally stoop, kneel, crouch

19  and crawl.  [Plaintiff] is limited to the performance of simple work."  [AR at 12-13.]  At step four,

20  the ALJ concluded that plaintiff is unable to perform her past relevant work.  [AR at 17.]  At step

21  five, relying on the Medical-Vocational Rules as a framework and the vocational expert's

22  testimony, the ALJ concluded that there are jobs that exist in significant numbers in the national

23

24  _____

25      [1]    Residual functional capacity ("RFC") is what a claimant can still do despite existing
     exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.
26  1989).

27      [2]    Medium work is defined as work involving "lifting no more than 50 pounds at a time with
     frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c),
28  416.967(c).

1  economy that plaintiff can perform.  [AR at 17-18.]  Accordingly, the ALJ found plaintiff not
2  disabled.  [AR at 18.]

**V.**

**THE ALJ'S DECISION**

5  Plaintiff contends that the ALJ failed to properly consider: (1) the evidence concerning
6  plaintiff's mental impairment; (2) the evidence concerning plaintiff's physical impairments; and
7  (3) plaintiff's testimony.  [Joint Stipulation ("JS") at 4.]  As set forth below, the Court agrees with
8  plaintiff, in part, and remands the matter for further proceedings.

**A.     PLAINTIFF'S MENTAL IMPAIRMENT**

11  Plaintiff contends that the ALJ erred in considering the evidence pertaining to her mental
12  impairment.  [JS at 4-9.]  Specifically, plaintiff asserts that the ALJ, in reaching the RFC
13  determination, failed to account for the opinion of nonexamining physician Dr. P. Y. Klein that
14  plaintiff can only perform work involving simple one- to two-step tasks.  [JS at 4-7.] Plaintiff further
15  contends that the jobs identified by the vocational expert, upon which the ALJ relied in finding
16  plaintiff not disabled, are inconsistent with Dr. Klein's opinion.  [JS at 7-9.]

17  In evaluating medical opinions, the case law and regulations distinguish among the opinions
18  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who
19  examine but do not treat the claimant (examining physicians); and (3) those who neither examine
20  nor treat the claimant (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527,
21  416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians
22  are given greater weight than those of other physicians, because treating physicians are employed
23  to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue,
24  495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite
25  the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound
26  to accept the opinion of a treating physician.  However, the ALJ may only give less weight to a
27  treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and
28  legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (the opinion of a

treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

The Regulations provide that although ALJs "are not bound by any findings made by [nonexamining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider [their] findings and other opinions ... as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled," because such specialists are regarded as "highly qualified ... experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  The Regulations further provide that "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist."   20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).  See also SSR 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

On October 12, 2007, Dr. Klein completed a Mental Residual Functional Capacity Assessment ("MRFCA") form, in which he opined that plaintiff is moderately limited in her abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; respond appropriately to changes in the work setting; be aware of normal

---

[3]    Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  hazards and take appropriate precautions; and travel in unfamiliar places or use public

2  transportation. [See AR at 242-43.] In assessing plaintiff's RFC and elaborating on the limitations

3  described above, Dr. Klein specifically opined that plaintiff has adequate memory and

4  understanding for simple one- to two-step tasks; adequate sustained concentration, persistence,

5  and pace for simple one- to two-step tasks; adequate social interaction; and adequate adaptation

6  to change in most work-like settings. [AR at 244.]

7       In the decision, the ALJ summarized some, but not all, of Dr. Klein's opinion. [See AR at

8  14.] Specifically, the ALJ noted that Dr. Klein opined in the MRFCA that plaintiff is moderately

9  limited in her abilities to understand, remember, and carry out detailed instructions and maintain

10  attention and concentration for extended periods [see id.], but did not mention that Dr. Klein also

11  found plaintiff moderately limited in her abilities to respond to work setting changes, be aware of

12  hazards, take precautions, travel, and use public transportation. Further, in summarizing Dr.

13  Klein's opinion concerning plaintiff's RFC, the ALJ did not mention the specific limitations identified

14  by Dr. Klein (including that plaintiff can only perform simple one- to two-step tasks). Rather, the

15  ALJ interpreted Dr. Klein's opinion concerning plaintiff's RFC as indicating that she has the mental

16  RFC to "perform simple work." [Id.] The ALJ asserted in the decision that he relied, in part, on

17  Dr. Klein's opinion in reaching the RFC determination that plaintiff is mentally able to perform only

18  simple work. [Id.]

19       The Court agrees with plaintiff that the ALJ did not adequately address Dr. Klein's findings.

20  Even though the ALJ discussed some of Dr. Klein's findings and asserted that he relied on his

21  opinion in reaching the RFC determination, because the ALJ ignored and excluded from the RFC

22  determination some of Dr. Klein's specific findings (i.e., that plaintiff is moderately limited in her

23  abilities to respond to work setting changes, be aware of hazards, take precautions, travel, and

24  use public transportation, and that she has the RFC to perform only simple one- to two-step

25  tasks), it appears that the ALJ implicitly rejected those portions of Dr. Klein's opinion without

26  providing any reason for doing so. This constitutes error. See 20 C.F.R. §§ 404.1527(f)(2),

27  416.927(f)(2); SSR 96-8p, at *7 ("The RFC assessment must always consider and address

28  medical source opinions. If the RFC assessment conflicts with an opinion from a medical source,

7

1   the adjudicator must explain why the opinion was not adopted."). "Judicial review of an

2   administrative decision is impossible without an adequate explanation of that decision by the

3   administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's

4   failure to explain why he disregarded medical evidence prevented "meaningful judicial review").

5   The ALJ's failure to expressly explain why he apparently rejected Dr. Klein's findings as discussed

6   above prevents meaningful judicial review. "Since it is apparent that the ALJ cannot reject

7   evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why

8   probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether

9   the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981)

10  (internal citation omitted).

11          Defendant asserts that the ALJ's RFC determination that plaintiff is able to complete simple

12  work sufficiently encompassed Dr. Klein's opinion that plaintiff can only perform simple one- to

13  two-step tasks. [JS at 9-12.] The Court disagrees. All jobs listed in the Dictionary of Occupational

14  Titles ("DOT") have general education development ("GED") levels -- defined as "aspects of

15  education (formal and informal) which are required of the worker for satisfactory job performance."

16  DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991). A job's GED

17  level pertains to, among other things, the reasoning development level necessary to perform a job,

18  ranging from 1 (the lowest level) to 6 (the highest level). Id. As defendant correctly notes [see JS

19  at 10-11], courts have concluded that a person capable of performing simple repetitive tasks can

20  perform jobs with a GED reasoning level of one (defined in the DOT as requiring an employee to

21  apply "commonsense understanding to carry out simple one- to two-step instructions" and "[d]eal

22  with standardized situations with occasional or no variables in or from these situations

23  encountered on the job") **and** jobs with a GED reasoning level of two (defined in the DOT as

24  requiring an employee to apply "commonsense understanding to carry out detailed but uninvolved

25  written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from

26  standardized situations"). See, e.g., Meissl v. Barnhart, 403 F.Supp.2d 981, 983-84 (C.D. Cal.

27  2005) (citing Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005); Money v. Barnhart, 91

28

1   Fed.Appx. 210, 214 (3rd Cir. 2004)); DOT, Appendix C - Components of the Definition Trailer,

2   1991 WL 688702 (1991).

3         Here, in concluding that plaintiff has the RFC to perform only simple one- to two-step tasks,

4   it appears that Dr. Klein effectively opined that plaintiff can **only** perform jobs with a GED

5   reasoning level of **one**.  Accordingly, the ALJ's determination that plaintiff can do simple work (i.e.,

6   jobs with GED reasoning levels of **one and two**) did not adequately encompass Dr. Klein's

7   opinion, as jobs with a GED reasoning level of two would be too challenging for plaintiff according

8   to Dr. Klein.  See Meissl, 403 F.Supp.2d at 983 (noting that a job with a GED reasoning level of

9   two "would involve more detail, as well as a few more variables, than that with a reasoning level

10   of one"); Grisby v. Astrue, 2010 WL 309013, at * 2 (C.D. Cal. Jan. 22, 2010) ("Level 2 reasoning

11   jobs may be simple, but they are not limited to *one- or two-step instructions.*  The restriction to jobs

12   involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level

13   2 reasoning.") (emphasis in original).  Remand is warranted so that the ALJ can properly consider

14   Dr. Klein's findings.[4]

15   /

16   /

17

---

18     [4]   Based on a hypothetical question posed by the ALJ in which plaintiff is mentally able to

19   perform "simple work," but which did not include Dr. Klein's findings that plaintiff is mentally limited to work requiring only simple one- to two-step tasks, the vocational expert testified that plaintiff

20   could perform the work of a hand packager (DOT No. 920.587-018), machine packager (DOT No. 920.685-078), and dining room attendant (DOT No. 311.677-018).  [See AR at 18, 55-57.]  All

21   three of these jobs require a GED reasoning level of two.  See DOT Nos. 311.677-018, 920.587-018, and 920.685-078.

22       "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must

23   set out *all* the limitations and restrictions of the particular claimant.'  Thus, an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Comm'r Social Sec. Admin., 574

24   F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)); see also Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) ("An ALJ must

25   propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").  Because the ALJ did not properly

26   consider Dr. Klein's findings, the ALJ's RFC determination and his hypothetical questions to the

27   vocational expert, which did not include all of Dr. Klein's findings (including that plaintiff can only perform simple one- to two-step tasks), were also defective.  Thus, it was error for the ALJ to rely

28   on the vocational expert's testimony in finding plaintiff able to perform other work at step five.

1    **B.    PLAINTIFF'S PHYSICAL IMPAIRMENTS**

2    Plaintiff contends that the ALJ failed to properly consider the evidence concerning her

3    physical impairments.  Specifically, plaintiff alleges that the ALJ erred in rejecting the opinion of

4    treating physician Dr. Peter Jalbuena.  [JS at 12-16.]

5    Plaintiff's treatment records reflect that she received treatment at LAC-USC Medical Center

6    for back pain from at least July 2006 to March 2009.  [AR at 25-30, 250-60, 265-68, 273, 277.]

7    Dr. Jalbuena was one of the LAC-USC Medical Center physicians who treated plaintiff, apparently

8    from September 2008 to March 2009.  [AR at 277, 280.]  On July 3, 2009, Dr. Jalbuena completed

9    a Physical Residual Functional Capacity Questionnaire form, in which he diagnosed plaintiff as

10    having degenerative joint disease at L5-S1, stated that he based his findings on an MRI showing

11    bulging of the L5-S1 disc, and noted plaintiff's symptoms of chronic low back pain and her

12    medication's side effects of drowsiness.  [AR at 277-80.]  Dr. Jalbuena also opined, in part, that

13    plaintiff's impairments had lasted or would last more than 12 months; her symptoms would

14    frequently interfere with her attention and concentration; she is incapable of even "low stress"

15    work; she cannot sit for more than 15 minutes or stand for more than 20 minutes at one time; she

16    can sit and stand/walk each for less than two hours total in an eight-hour workday; she would need

17    unscheduled breaks due to her impairments approximately two or three times during a two hour

18    period; she can never twist, stoop/bend, crouch, or climb ladders; she can occasionally climb

19    stairs; she would experience "good" days and "bad" days due to her impairments; and she would

20    likely need to miss work more than four days per month due to her impairments.  [Id.]

21    In the decision, the ALJ rejected Dr. Jalbuena's opinion concerning plaintiff's limitations.[5]

22    [AR at 13.]  Specifically, the ALJ asserted that although Dr. Jalbuena stated that his opinion was

23    based on plaintiff's MRI results, "the radiologist characterized the findings as a '[m]ild diffuse disc

24    bulge at L5-S1 without central canal or neuroforaminal stenosis.'"  [AR at 13, quoting AR at 266

25    (emphasis in ALJ opinion).]    The ALJ also reasoned that plaintiff's treatment was "not

26

27    _____

28    [5]    The ALJ mistakenly referred to Dr. Jalbuena as "Dr. Jalbula" in the decision.  [See AR at 13; JS at 14, n.5.]

10

commensurate with the level of disability endorsed by" Dr. Jalbuena. [AR at 13.] The ALJ stated that he instead relied on the opinions of the examining and nonexamining physicians to find that plaintiff was physically able to perform "medium work with occasional stooping, kneeling, crouching and crawling and no climbing of ladders, ropes and scaffolds." [AR at 13, citing AR at 212-15 (opinion of examining physician Dr. Kambiz Hannani), AR at 221-25 (opinion of nonexamining physician Dr. J. H. Becker), AR at 274-75 (opinion of nonexamining physician Dr. Leonore C. Limos).]

The Court concludes that the ALJ provided insufficient reasons for rejecting Dr. Jalbuena's treating opinion.  First, to the extent that the ALJ rejected Dr. Jalbuena's opinion as not being sufficiently supported by the treatment record or the objective medical findings, this was an inadequate basis for rejecting the opinion because it fails to reach the level of specificity required for rejecting a treating source opinion.  See Embrey, 849 F.2d at 421-23 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). The ALJ failed to explain *why* he concluded that Dr. Jalbuena's findings are not commensurate with plaintiff's treatment [see AR at 13]; the ALJ's conclusory assertion in this regard does not constitute a specific and legitimate reason for rejecting the opinion of a treating physician.  See, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D. Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's opinion as inconsistent with the medical treatment, where the ALJ did not specify how the treatment record was inconsistent with the physician's opinion).  Further, insomuch as the ALJ independently interpreted plaintiff's MRI results in suggesting that a "mild" disc bulge could not result in the severity of the limitations assessed by Dr. Jalbuena, that was also erroneous because "[t]he ALJ may not substitute his own layman's opinion for the findings and opinion of a physician."  Gonzalez Perez v. Sec'y of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); see also Ferguson v. Schweiker, 765 F.2d

11

31, 37 (3rd Cir. 1985) (holding ALJ erred by "independently reviewing and interpreting the laboratory reports" and thus "impermissibly substituted his own judgment for that of a physician").

Next, although contrary medical opinions based on independent clinical findings may constitute substantial evidence upon which the ALJ may rely in determining the weight to afford a treating physician's opinion (see Andrews, 53 F.3d at 1041), the ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician. Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See Orn, 495 F.3d at 632-33; SSR 96-2p; see also Valentine, 574 F.3d at 692 ("to reject the opinion of a treating physician 'in favor of a conflicting opinion of an examining physician[,]' an ALJ still must 'make[] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)). Here, the ALJ erred in failing to expressly explain how Dr. Jalbuena's findings conflicted with other parts of the medical evidence and why his opinion concerning plaintiff's physical limitations was rejected in favor of conflicting opinions of the examining and nonexamining physicians. The ALJ's rejection of Dr. Jalbuena's opinion without expressly setting forth detailed, legitimate reasons for doing so was improper. See Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording non-treating physicians' opinions controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his interpretations thereof with an explanation as to why his interpretations of the evidence, rather than those of the treating physicians, were correct). Remand is warranted for further consideration of Dr. Jalbuena's opinion.[6]

/

/

---

[6] As the Court finds remand warranted for the reasons set forth above, the Court exercises its discretion not to address plaintiff's remaining contention of error.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate in order for the ALJ to reconsider the medical findings of Dr. Klein and Dr. Jalbuena.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 16, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE